IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BRENT M. LAWSON                    §
                                   §
              Petitioner,          §
                                   §
VS.                                §          NO. 3-07-CV-1516-G
                                   §
DAVID BERKEBILE, Warden            §
FCI-Seagoville                     §
                                   §
              Respondent.          §

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Brent M. Lawson, a federal prisoner, has filed an application for writ of habeas

corpus pursuant to 28 U.S.C. § 2241.   For the reasons stated herein, the application should be

denied.

I.

Petitioner is serving a 60-month sentence on federal child pornography charges.   While

incarcerated, petitioner enrolled in a transitional drug abuse treatment ("TDAT") program for the

purpose of obtaining early release.   The TDAT program has two components:  (1) a residential

treatment phase, during which the prisoner receives drug abuse counseling while in prison; and (2)

a transitional services phase, during which the prisoner receives treatment while residing in a

Community Corrections Center ("CCC").   The Bureau of Prisons ("BOP") has determined that a

prisoner must spend at least 90 days in a CCC in order to satisfy the transitional services component

of the TDAT program and be eligible for early release.   Although petitioner successfully completed

the residential treatment phase of the program, his Unit Team recommended only a 60-day CCC

placement because of, *inter alia*, the nature of the offense and his status as a sex offender.[1]  That recommendation was accepted by the warden and upheld by the BOP Regional Director and the Administrator of National Inmate Appeals.  Having exhausted his administrative remedies, petitioner now seeks federal habeas relief.

## II.

Petitioner generally challenges the decision to deny him approval for early release based solely on his failure to spend 90 days in a CCC which, in turn, prevented him from completing the transitional services phase of the TDAT program.  Succinctly stated, petitioner contends that the warden abused his discretion by relying on an unwritten, ambiguous policy that is not uniformly followed by prison authorities and is contrary to the purpose of the TDAT program and the terms of his participation agreement.

## A.

In 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  Crime Control Act of 1990, Pub.L. 101-647, § 2903, 104 Stat. 4789, 4913, *codified as amended at* 18 U.S.C. § 3621(b).  Four years later, Congress amended the statute to provide an incentive for prisoner participation.  The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103-322, § 32001, 108 Stat. 1796, 1897, *codified at* 18 U.S.C. § 3621(e)(2)(B) (emphasis added).  The statute does not specify the

---

[1]  Under BOP policy, a prisoner who was convicted of an offense involving the possession, distribution, or mailing of child pornography or related paraphernalia should be assigned a Sex Offender Public Safety Factor ("PSF").  *See* BOP PS 5100.08, Ch. 5, Code F, p. 8.  Ordinarily, such prisoners are not eligible to participate in a CCC program.  *See* BOP PS 7310.04(10)(a).

requirements of a substance abuse treatment program.  Instead, Congress vested prison authorities

with discretion "to shorten by up to one year the prison term of a prisoner who has successfully

completed a treatment program, based on criteria to be established and uniformly applied by the

Bureau of Prisons."  H.R. Rep. 103-320, 103rd Cong., 1st Sess. (1993); *see also Taylor v. U.S.*

*Bureau of Prisons*, 172 F.3d 879 (Table), 1999 WL 84249 at *1 (10th Cir. Feb. 22, 1999).

The criteria for early release established by the BOP are set forth in 28 C.F.R. § 550.58.  This

regulation provides, in pertinent part:

> An inmate who has successfully completed a Bureau of Prisons
> residential drug abuse treatment program on or after October 1, 1989
> is otherwise eligible if:
>
> (i)      The inmate completes all applicable transitional services
> programs in a community-based program (i.e., in a Community
> Corrections Center or on home confinement); and
>
> (ii)      Since completion of the program, the inmate has not been
> found to have committed a 100 level prohibited act and has not been
> found to have committed a prohibited act involving alcohol or drugs.

28 C.F.R. § 550.58(3).  BOP policy further specifies that an "inmate must have at least 90 days in

the CCC or home confinement to participate in the TDAT."  BOP PS 7430.02(8)(a)(4).  However,

the 90-day participation requirement in a community-based program "applies only to the Enhanced

Treatment Services (ETS) participants."  *Id.*[2]

### B.

The gravamen of petitioner's claim is that he has been denied due process because there is

no formal policy that requires non-ETS participants to spend at least 90 days in a CCC in order to

complete the TDAT program or, alternatively, because the warden arbitrarily prevented him from

---

[2]  An ETS participant is "[a]n inmate with a documented drug abuse problem but who did not choose to volunteer
for the residential drug abuse program[.]"  BOP PS 7430.02(11)(c); *see also* 28 C.F.R. § 550.59.  It is clear that
petitioner, who voluntarily agreed to participate in the TDAT program, was not an ETS participant.

completing the transitional services component of the program by approving only a 60-day CCC placement. However, in order to establish a due process violation, petitioner must first demonstrate that he has a "liberty interest" in obtaining a sentence reduction after successful completion of the TDAT program.

1.

In the prison context, a liberty interest may be created either under the Due Process Clause or by statute. *See Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007) (citing cases). The Due Process Clause creates a liberty interest in punishment that is not "qualitatively different from the punishment characteristically suffered by a person convicted of a crime." *Id., quoting Sandin v. Conner*, 515 U.S. 472, 479 n.4, 115 S.Ct. 2293, 2297 n.4, 132 L.Ed.2d 418 (1995) (internal quotations omitted). "So long . . . as the punishment is within the normal limits or range of custody which the conviction has authorized the State to impose, there is no violation of a protected liberty interest conferred by the Due Process Clause." *Id.* (citations and internal quotations omitted).[3]

Where the Due Process Clause does not create a liberty interest, the government can create one by statute. *Id.* A statute may create a liberty interest that is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, *quoting Sandin*, 115 S.Ct. at 2300. The hallmark of a statute that does not create a liberty interest is discretion. As the Fifth Circuit observed in *Richardson*:

---

[3]   Examples of punishment that implicate a constitutionally protected liberty interest are the involuntary transfer of a prisoner to a mental hospital for treatment and the involuntary administration of psychotropic drugs to a mentally ill prisoner. *See Vitek v. Jones*, 445 U.S. 480, 493-94, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980).

> Where the statute grants the prison administration discretion, the government has conferred no right on the inmate. Thus, a protected liberty interest exists only when a regulation uses mandatory language to place a substantive limit on official discretion. A unilateral expectation of certain treatment is insufficient; a prisoner must have a legitimate claim of entitlement to it.

*Id.* (citations and internal quotations omitted).

2.

Here, neither the Due Process Clause nor any federal statute or regulation confers a liberty interest in a sentence reduction upon the successful completion of the TDAT program. Petitioner has not suffered any punishment "qualitatively different from the punishment characteristically suffered by a person convicted of a crime." *Richardson*, 501 F.3d at 419. The warden's decision denying approval for early release means only that petitioner will serve the remainder of his sentence under typical circumstances. Similarly, there is no mandatory language in 18 U.S.C. § 3621(e)(2)(B) or any BOP regulation requiring that inmates be released upon completion of a drug treatment program. *Id.*, *citing Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998); *see also Lopez v. Davis*, 531 U.S. 230, 241, 121 S.Ct. 714, 722, 148 L.Ed.2d 635 (2001) (prisoner failed to establish due process violation where BOP policy did not require early release upon completion of drug treatment program); *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1679 (1998) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest."). Because petitioner has no protected liberty interest in receiving a sentence reduction, he cannot establish a due process violation.

C.

Petitioner further alleges that he has been treated differently than other prisoners serving sentences for more violent crimes. This argument implicates the Equal Protection Clause. In order

to state an equal protection claim, petitioner must show that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir.), *cert. denied*, 125 S.Ct. 153 (2004). Here, petitioner has not identified any similarly-situated prisoners who were treated more favorably than him. Instead, petitioner compares himself to a different class of prisoners who are serving sentences for more violent offenses. This distinction is fatal to his equal protection claim.[4]

## D.

Finally, petitioner contends that he is entitled to consideration for early release under the express terms of the TDAT participation agreement. This argument fails for two reasons. First, it is doubtful that a breach of contract claim can be raised in a section 2241 habeas proceeding. *See Cadena v. Tombone*, 11 F.Supp.2d 889, 894 (E.D. Tex. 1998), *citing Royal v. Tombone*, 141 F.3d 596, 603-04 (5th Cir. 1998). Second, petitioner has failed to show the existence of a contract entitling him to early release. To the contrary, the agreement relied on by petitioner plainly states that "if I have been found eligible for an early release under 18 U.S.C. § 3621(e), this eligibility is provisional, and may change." (Resp. App. at 13) (emphasis in original). Moreover, petitioner signed a "Residential Drug Abuse Program Notice to Inmate," in which he acknowledged that "a determination of early release for me is *provisional, may change*, and depends on continued positive behavior and successful participation in all components of the program[.]" (*Id.* at 22) (emphasis added). This claim is without merit.

---

[4] To the extent petitioner argues that prison authorities improperly considered pre-conviction conduct in determining his eligibility for placement in a CCC, that argument has been rejected by the Supreme Court. *See Lopez*, 121 S.Ct. at 720-23 (holding that BOP has discretion to establish categories of non-violent offenders ineligible for early release based on their pre-conviction conduct).

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 3, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE